﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190228-4703
DATE: October 31, 2019

ORDER

Entitlement to an initial compensable rating for service-connected bilateral hearing loss is denied.

FINDING OF FACT

Throughout the course of the appeal period, the Veteran’s service-connected bilateral hearing loss was manifested, at its worst, by Level II hearing in the right ear and Level II hearing in the left ear.

CONCLUSION OF LAW

The criteria for an initial compensable rating for service-connected bilateral hearing loss are not met. 38 U.S.C. § 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.85, 4.86, Diagnostic Code 6100 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served in the Tennessee Army National Guard from June 1971 to June 1999, with a period of active duty from August 1990 to March 1991.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program. 

In a November 2015 rating decision, the agency of original jurisdiction (AOJ) awarded the Veteran service connection for sensorineural hearing loss, and assigned a noncompensable (zero percent) initial rating. The Veteran disagreed with this assigned rating, initiating this appeal. 

While his appeal was pending, the Veteran selected the Higher-Level Review lane when he submitted the RAMP election form on August 14, 2018. Accordingly, the December 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form, and denied the Veteran’s claim for a higher initial rating. In February 2019, the Veteran timely appealed the issue decided in the RAMP rating decision and listed above to the Board, and he requested the Evidence Submission process.

Disability evaluations are determined by the application of the facts presented to VA’s Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3. 

The veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). However, where the question for consideration is entitlement to a higher initial rating assigned following the grant of service connection, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of “staged rating” (assignment of different ratings for distinct periods of time, based on the facts found) is required. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

As noted above, in the November 2015 rating decision on appeal, the AOJ granted service connection for bilateral hearing loss, and assigned an initial noncompensable disability rating pursuant to 38 C.F.R. § 4.85, Diagnostic Code 6100.

Ratings of hearing loss range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of speech discrimination tests combined with the average hearing threshold levels as measured by puretone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 cycles per second. To rate the degree of disability for service-connected hearing loss, the Rating Schedule has established eleven auditory acuity levels, designated from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85(h), Table VI.

In order to establish entitlement to a compensable rating for hearing loss, it must be shown that certain minimum levels of the combination of the percentage of speech discrimination loss and average puretone decibel loss are met. The assignment of disability ratings for hearing impairment is derived by a mechanical application of the Rating Schedule to the numeric designations assigned after audiometric evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). 

The criteria for rating hearing impairment use controlled speech discrimination tests (Maryland CNC) together with the results of puretone audiometry tests. These results are then charted on Table VI, Table VIA in exceptional cases as described in 38 C.F.R. § 4.86, and Table VII, as set out in the Rating Schedule. 38 C.F.R. § 4.85. An exceptional pattern of hearing loss occurs when the puretone threshold at 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, or when the puretone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86. Specifically, when the puretone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz, the Roman numeral designation for hearing impairment is determined from either Table VI or Table VIA, whichever results in the higher numerical. 38 C.F.R. § 4.86(b). That numeral will then be elevated to the next higher Roman numeral, and then each ear will be evaluated separately. Id.

In Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007), the Court held that relevant to VA audiological examinations, in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. Id.

Pertinent evidence includes October 2015 and January 2017 VA examination reports, private treatment records, and the Veteran’s lay statements.

In connection with his claim for service connection, the Veteran underwent an October 2015 VA examination, which revealed the following puretone thresholds, in decibels:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 20 40 75 75

LEFT 15 20 40 75 85

The puretone threshold averages (from 1000 to 4000 Hz) were 53 in the right ear and 55 in the left ear. Speech recognition testing using the Maryland CNC Word List revealed speech recognition ability of 90 percent in the right ear and 92 percent in the left ear. The Veteran was diagnosed with sensorineural hearing loss bilaterally. With regard to the functional impact of hearing loss, the Veteran reported difficulty understanding speech when not facing the speaker.

These audiometry test results equate to Level II in the right ear and Level I in the left ear using Table VI. 38 C.F.R. § 4.85. Applying the percentage ratings for hearing impairment found in Table VII, the October 2015 VA examination results warrant a noncompensable disability rating. 38 C.F.R. § 4.85.

In support of his claim, the Veteran submitted a December 2016 private audiogram which revealed the following puretone thresholds, in decibels:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 20 45 75 80

LEFT 15 20 50 80 85

The puretone threshold averages (from 1000 to 4000 Hz) were 55 in the right ear and 59 in the left ear. Speech recognition testing revealed speech recognition ability of 88 percent in the right ear and 80 percent in the left ear; however, the word list used was reported as the NU-6, not the Maryland CNC. Accordingly, under 38 C.F.R. § 3.385, the examination is not valid for evaluation purposes. The audiometric test results also do not demonstrate an exceptional pattern of hearing loss such that use of Table VIA (which does not factor in speech recognition ability) would be appropriate. 

In January 2017, the Veteran underwent another VA examination, which revealed the following puretone thresholds, in decibels:

(Continued on Next Page)

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 20 40 75 85

LEFT 15 20 40 80 90

The puretone threshold averages (from 1000 to 4000 Hz) were 55 in the right ear and 58 in the left ear. Speech recognition testing using the Maryland CNC Word List revealed speech recognition ability of 94 percent bilaterally. The Veteran was diagnosed with sensorineural hearing loss bilaterally. With regard to the functional impact of hearing loss, the Veteran reported difficulty understanding speech at a distance, trouble understanding words when someone was whispering, and an inability to hear the television.

These audiometry test results equate to Level I in the right ear and Level II in the left ear using Table VI. 38 C.F.R. § 4.85. Applying the percentage ratings for hearing impairment found in Table VII, the January 2017 VA examination results warrant a noncompensable disability rating. 38 C.F.R. § 4.85.

The Board notes that Table VIA is not applicable because there is no indication that speech discrimination testing was inappropriate for the Veteran, and the audiometric results did not show the Veteran’s threshold to be 55 decibels or more at each of the four specific frequencies (1000, 2000, 3000, and 4000 Hertz), or that his puretone threshold was 30 or lower at 1000 Hertz and 70 or more at 2000 Hertz. See 38 C.F.R. §§ 4.85(c), 4.86(a).

In summary, based on the audiological examinations of record, the Board finds that the severity of hearing loss identified at each test was not to a level warranting a compensable disability rating under the rating criteria. Thus, an initial compensable rating for hearing loss is not warranted.

The Board acknowledges the Veteran’s statements regarding the difficulty his hearing loss has caused in his daily life. The Board has carefully considered these statements, and in no way discounts the Veteran’s asserted difficulties. However, it must be emphasized that schedular disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designation assigned after audiometry results are obtained. Hence, the Board must predicate its determination on the basis of the results of the audiology studies of record. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). In other words, the Board is bound by law to apply VA’s rating schedule based on the audiometry results. See 38 U.S.C. § 1155 ; 38 C.F.R. § 4.1. Here, the audiometry results show a level of hearing loss that is compatible with a noncompensable rating. The Veteran’s additionally reported complaints, although understandably difficult, are representative of sensorineural hearing loss and are therefore contemplated by the rating schedule. See Doucette v. Shulkin, 28 Vet. App. 366 (2017).

As the preponderance of the evidence is against his claim for an initial compensable rating, the benefit-of-the-doubt doctrine is not applicable, and his claim must be denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

 

 

V. Chiappetta

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board James R. Springer, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.